Here at Police Accord, Jay Beatty appearing on behalf of Jones Stevedoring. I'd like to reserve ten minutes for rebuttal. We're here today because the ALJ in this long short case made two legal errors in its consideration of the evidence and because of these errors I don't understand that sentence. I thought what the ALJ was doing was making a factual decision. His factual decision is whether the death was caused by the surgery or whether the death five hours after the surgery was a mere coincidence unrelated to the surgery. He decided that it was caused by the surgery. And our review has not only the usual constraints for findings of fact review, but the additional deference that an administrative agency gets. I don't understand how it turns into a question of law. It turns into a question of law because the judge has to approach the evidence in particular ways that are prescribed by law. He has to apply the treating physician rule. Counsel, how does that help you, even if he does? The treating physician gave two conflicting opinions. Right afterwards he told the son it was because of the surgery. I'm really sorry. I mean, I'm paraphrasing. And then later he came in after getting some advice from counsel and said, oh, no, it has nothing to do with the surgery. So no matter which way the ALJ goes, it's going to conflict with one of the two things the treating physician said. Well, that's not necessarily so. What the treating physician said was, initially Dr. Hacker said when he was contacted by Decedent's son that he did not think that the surgery was the cause of Decedent's stroke or death. Later he said that there's a possibility because there's a temporal connection between the stroke and the surgery. There's a possibility that the surgery may have caused it and that he was going to talk to his cohort, Dr. Terse, and decide whether or not Dr. Terse believed that there was any connection. Dr. Terse also said that because there was a temporal connection between the surgery and the stroke, there was a potential for causation. He felt that there was a potential for causation because during surgery you could end up with a hypercoagulable state, or there could be a drop in your blood pressure such that there's no blood in your veins and a clot can form. Later on he said, I don't find evidence for either of those. You're getting far away from Judge Graber's question, and I don't understand your legal argument any better now than I did before. You're saying apply the treating physician rule from Social Security to a Longshoreman and Harbor Workers case. I don't get that, and then even if I do, the treating physician rule in Social Security cases is not the treating physician wins. If a surgeon does surgery and a guy dies on a table and the surgeon says, not my fault, that's the end of the inquiry. All the treating physician rule says is that the ALJ has to have good reasons for rejecting, good articulated reasons for rejecting the treating physician's opinion. Here he has a bunch of other physicians, which gives him reasons. Yes, he must have good reasons for rejecting the opinion of a treating physician, and he also must follow the law and the procedure that's been prescribed by this court. In Amos v. Director, this court said that the opinion of a treating physician is entitled to special deference. It didn't say what that meant, but it cited to Magalanes v. Bowen to put a little flesh on the treating physician's rule. A Social Security case. Exactly, a Social Security case. In that case, the court said that the judge must do certain things. If confronted with an uncontradicted opinion of a treating physician, the judge has to put on the record clear and convincing reasons. It's not uncontradicted, even by the same doctor. Yes, I agree. That's my problem with your argument. I agree. The court went on to say, though, in Magalanes, even where the opinion is contradicted by a non-treating physician, the judge must put on the record specific and legitimate reasons for rejecting the opinion of a treating physician. Magalanes is a Social Security case. Yes. It's saying import all of Social Security law on treating physicians. And even that may be satisfied here, unless we flyspeck the judge's opinion and say, well, he didn't articulate it well enough. I am saying that this court has, in Amos v. Director, imported some portion of the Social Security case law, some portion of the case law interpreting the treating physician rule, into the Longshore Act. It has both a substantive and a procedural aspect, the substantive aspect being the sort of deference that's going to be given to the opinion of a treating physician, the procedural aspect being what the ALJ has to do on the record if he or she is going to reject the opinion of a treating physician. And that is our axe to grind in this case, Your Honor. He did not follow the procedure. He did not state on the record why he rejected the persuasive opinion of a treating physician. The reason we have to have a rule requiring some articulation of the reasons is otherwise we'd be precluded from appellate review. This court and the parties would be left to guess at why the ALJ rejected the opinion of a treating physician and guess as to whether or not he had specific or legitimate reasons for doing so. And that's exactly what happened in this case. The ALJ in connection with the causation opinion, what caused decedent's stroke and death, made no reference at all to Dr. Hacker. And what's mysterious about that- That's not completely true. At the very end he talks about, even Dr. Hacker explained about the risk factors about smoking, which is in the discussion of the reason for the stroke. And he's already discussed the fact that Dr. Hacker gave both opinions, which is where I started my questioning. That is that he made some statements that the surgery was a cause and then backtracked and said it wasn't. So he has acknowledged Dr. Hacker. Dr. Hacker has said it could be a cause. Dr. Hacker relied on some of the theories that were proposed by Dr. Church. None of those theories were the theories proposed and proved by claimant. This is so- In footnotes five of the benefits review board decision, they dealt with their argument. And they say that it's just wrong. They say the administrative law judge expressed at length the evidence regarding the change in Dr. Hacker's position, regarding the causal relationship between decedent surgery and a stroke, stated that Hacker's testimony was based on the fact he had no professional knowledge of a relationship between this kind of clot and surgery. And in light of his explicit crediting of the testimony of Drs. Tiley and Wellgaard, this is sufficient explanation. What's the matter with that? He did not discuss it in the context of the causation opinion on what caused a decedent's death. What he did was he summarized the medical evidence and the testimony that he heard at trial. And he said essentially in passing that there was conflicting evidence as to what Hacker's opinions had been. There was evidence that his opinions had changed over time. There was no suggestion in the discussion of the facts, the medical evidence, the testimony at hearing, that he credited Hacker's opinion or discredited Hacker's opinion because of that testimony at trial. He did not fulfill his duties under the APA and under the treating physician rule of stating on the record why or even if he was dismissing or rejecting Dr. Hacker's opinion. You have to remember there's nothing in this opinion at all where the ALJ specifically says, I don't believe Dr. Hacker. All he does is he doesn't discuss him in connection with the cause. I think it would have been enough if he discussed... Would that have been enough? Yes or no? No. Why did you use the illustration? Because he would have to go to the next step of giving us specific and legitimate reasons for rejecting it. First he'd have to tell us he rejected it, and then he'd have to tell us why. And that's a combined requirement of the APA and the treating physician rule as it exists now under the Longshore Law. I'm looking at the explanation that the ALJ gave at pages 415 through 417 of the record. I just don't understand what's wrong with that. It looks like he's saying why he thinks the stroke was caused at least in part by the surgery, and he goes through it in detail, and I don't understand what the problem is. Yes, he goes through in detail discussing why he believes Dr. Nalgarden-Tiley's opinion proved the point. That's not enough in connection with the opinion of a treating physician. Right. Because the opinion of a treating physician is entitled to special deference, and what that does is trigger... Look, any real human, considering it with common sense, would think that when a surgeon says, well, the guy died right after my surgery, five hours later, but my surgery had nothing to do with it. It's because he used to be a cigarette smoker, and he was kind of heavy, though he was pretty tall for his weight. My surgery had nothing to do with it. Any ordinary human would think, well, I can see why you don't want to take responsibility morally and in terms of malpractice liability, but are you kidding? And then you've got all these other doctors saying, well, this is just one of the standard risks of this surgery is the clock breaks loose and kills the guy. And the ALJ goes through it for three pages of single-space print. I'm not understanding the argument, frankly. Well, and I don't want to be cavalier here, but every human's understanding of cause and effect is not necessarily correct, and that's why we have doctors and experts. The fact that there's a temporal connection between the surgery and the stroke doesn't create causation. Actually, a couple of doctors said it probably does. Melgard and Tiley, two retired doctors who were called as testifying experts and who had never seen this patient before. Their theory was based on certain assumptions concerning the stature of his neck, the procedure carried out during his surgery, his past history of which they were unfamiliar. They were relying on facts that were within the specific understanding and particularly within the understanding of Dr. Hacker, the doctor who actually carried out the surgery. Yet the expert witnesses don't see the patient. They base their testimony based upon facts which have been presented to them through other pieces of evidence. In long, short cases. Is that the normal way that expert testimony is introduced in a trial? In long, short cases, it's not uncommon that an expert actually does an independent medical examination. The expert actually sees the patient and testifies concerning the patient's condition or disability. Usually in a long, short case, claimants treating physicians testify. The employer has the claimant seen by an independent medical examiner, and then that examiner either gives testimony or writes a report. In this case, claimants, testifying experts, never even saw the body. I don't want to be crass here, but they didn't examine the body. They did not see where the surgical wound was made. They did not talk to the doctor who created that wound to determine where it was placed or what techniques he used during this surgery. What did they review? From what I can tell, their review is rather scant of some records that were created. Don't categorize it. Just tell me what they reviewed. My understanding is that they were given some deposition testimony, they were given some past medical records, and apparently they were given the autopsy. One of the problems with the autopsy in this report, or in this case, is that it did not cover really the anatomical structures that were at issue, namely the vertebral arteries. And the claim is that the decene's neck was hyperextended to the extent where it crimped the vertebral arteries, and it created a clot that went up into the basilar arteries. Now, there's no evidence that the vertebral arteries were ever crimped or clotted. Nobody cut those down and took a look. So we're just surmising that there was a clot form there, as opposed to somewhere else in the body. Or, as all the doctors agreed, that under certain circumstances, you can actually have a clot form above the basilar artery and still make its way into that artery and cause an occlusion in a stroke like we had in this case. The whole problem in this case also was compounded by the ALJ's determination that the employer had failed to overcome the Section 28 presumption of compensability. And it's clear that the unequivocal testimony of a treating physician is sufficient to overcome that presumption. Jones overcame the presumption of compensability, and the ALJ erred in finding that it didn't. The board... It looks like the critical paragraph here, or I guess not the only one, but a critical one, is toward the bottom of page 416, where the ALJ is talking about the doctors that did the surgery. And he says he finds it interesting that, while Dr. Seery speaks well of Dr. Hacker's surgical skill, he nevertheless disagreed with Dr. Hacker on the need for surgery. So that's kind of gently implying that maybe it was unnecessary surgery that killed him. And then he goes further on that, and he says Dr. Seery's cursory opinion does not match up to the thorough and well-articulated explanation of claimant's experts that the surgery contributed to the stroke. Claimant's experts not only addressed the clinical findings of Mr. Webb but also explained the dangers associated with this particular surgery. I accept their expert opinions as reasonable. Then he goes on in the next paragraph to discount the notion that because the man used to be a cigarette smoker, that's what killed him. There are three things that are significant about that passage. One, the ALJ claims to put aside the Section 28 presumption for a moment and weigh all the evidence, but all he does is trash Dr. Seery's. He doesn't go on to weigh all the evidence, including the opinion of Dr. Hacker. He says he is. He doesn't say anything about Dr. Hacker in that paragraph or the following paragraphs. Nowhere in the causation discussion does he talk about Dr. Hacker. Another fascinating aspect, maybe mystifying of the decision in order in this case, is that the ALJ relies on Dr. Hacker and actually cites to the treating physician's rule in his discussion as to the causal link between the injury and the need for neck surgery. He relies heavily on it. The causal link the ALJ laid out clearly. You have to pull on the man's neck a lot in order to position him for the surgery, and that sometimes causes clots that break loose. He says so in the first full paragraph on page 416. Right, but statistics or epidemiology don't prove causation, and he doesn't know exactly what was done with the man in this case. Dr. Hacker's testimony was he had a very short, thick neck. He had to make an incision laterally across the neck from the front to open and get to the man's spine. According to his testimony, the man's neck was so short that they had to put locating pins, which were these metal pins that they used for locating the cervical space on an x-ray, far above it. A large part, if not the centerpiece, of Dr. Melgard's testimony was, look how far up this locating pin is. It was so far up, that means the wound was there, and he had to reef on that man's neck just to open a wound large enough to get further down his neck to get to the right cervical level. Well, Dr. Hacker said in his report, I put the pin way up here because this guy has such a darn short neck. So there were a lot of finessed facts that Melgard and Tiley relied on that weren't necessarily supported by the record in this case. Their opinion was, to a great degree, just surmise. Tiley's opinion has to be overturned if he doesn't deal with every factual contention made by the leasing side. I don't think that the APA requires them to do that. In fact, I know for a fact it doesn't. This Court said it on many occasions, that they don't have to discuss every single piece of evidence in the record. But the APA and the treating physician rule do require that they discuss and state specific and legitimate reasons for rejecting a treating physician's probative opinion on the central issue in the case. In this case, the cause of decedent stroke and death. They must do that. And the ALJ didn't do that. And as a result, the ALJ, if this Court finds there's substantial evidence to support the opinion, the ALJ must at a minimum consider that opinion, the opinion of Dr. Hacker, and determine whether or not it affects the outcome in this case. Thank you. Thank you. May it please the Court, Megan Flynn representing the claimant. This is a classic case of weighing competing medical evidence, and the ALJ's decision is perfectly appropriate. There's no way to apply the treating physician rule to the third opinion offered by Dr. Hacker in the course of a deposition with his own lawyer present, because it already, as treating physician, offered two opinions that were different. Tell me something. Sure. Our Court, not long ago, within the last couple of years, took the treating physician rule from Social Security and applied it to ERISA cases. The Supreme Court reversed us. They said treating physician rule is a Social Security rule, has nothing to do with ERISA cases. What is the status of the treating physician rule from Social Security in Longshoreman's and Harvard reporters' cases? To date, in this Court, as Mr. Beatty pointed out, it's been adopted, at least with citation of the Magalenas case, for Longshore cases. I know there's a lot of attorneys out there who are hoping to change that, but as far as I know, there's nothing different. There's nothing pending at the Supreme Court or anything like that. But there's never been cases that are fleshing out how much of the detail from the Social Security rule is incorporated into Longshore cases. And that may be an issue that someday this Court is going to have to address, but this isn't the case to do it in. In this case, you have the only opinion that Jones wants you to apply that rule to is an opinion offered long after Dr. Hacker ceased to be a treating physician and started to act in his own interest. What exactly is the treating physician rule? How is it articulated for the Longshore cases in the Ninth Circuit? The only articulation would be from a borrowing of Social Security cases. Under the Social Security cases, the rule is the opinion of a treating physician as to the condition is entitled to significant weight because the treating physician is employed to cure and because in theory the treating physician is going to have a better observation. Okay, significant weight. What else? The way that plays in on the standard of review is in Social Security cases, this Court has said that if the treating physician offers an opinion and there's no conflicting opinions, the ALJ is required to and basically an ALJ's decision is not going to be supported by substantial evidence if the ALJ rejects the treating physician's opinion without anything else to point to. The kinds of things that are considered substantial evidence to point to are a contrary opinion. Now, this is not a case where the treating physician's rule is where there's no conflicting evidence. Correct. What is the Ninth Circuit treating physician rule as applied in the Longshore cases where there is conflicting evidence? Where there's conflicting evidence based on something different and here we have that something different. We have these doctors who have different experience with this being a known risk of surgery. When there's a conflicting opinion based on separate bases, that is substantial evidence in itself for disregarding the opinion of the treating physician. The ALJ doesn't need to explain it any further. Would it be sufficient if the only fact was that the treating physician changed his opinion during the course of this proceeding? It would be, even if there were... Would that be sufficient to discredit the treating physician? Sure. I mean, I think that on this record... That would be all that would be needed. Sure. And that's essentially what the ALJ has said. The ALJ goes... And the administrative law judge said that. Yes. He said Dr. Hacker twice said this could be a cause and then when his lawyer was present he said it isn't. And the ALJ found that the basis for that final opinion was I'm not aware of this happening. Since the ALJ expressly accepted the other testimony that it does happen, that in itself throws out the whole foundation for Dr. Hacker's final opinion. So even if that were entitled to treating physician weight, the ALJ has more than adequate basis and substantial evidence and explanation for not accepting that opinion. And then you had one question about what the experts relied on. I was just going to give you the citations in the record from the experts. It's ER 146 and ER 153. They discussed what they reviewed, including 96 items of medical history dating from 1967. They reviewed all the x-ray reports from during the surgery, which is the only way that any of the doctors identified where the pins were located, and that's just kind of really a non-issue. The ALJ and the board both disposed of those issues. The ALJ expressly disposed of this whole idea that the experts didn't know what they were talking about. Unless, of course, questions, I think everything's been covered. Thank you. Thank you, counsel. Magalanes v. Bowen is very express, and I quote from the case. It says, To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must make findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record. The problem in this case, problem for claimant in this case, is that we don't know if ALJ Votone rejected Dr. Hacker's opinion. If he did reject Dr. Hacker's opinion, we don't know why. I don't understand. I mean, part of Hacker's opinion was to blame the death on the dead man because he used to be a cigarette smoker. So the ALJ says, Webb stopped smoking many years earlier, and he says any general doubt that the stroke might have either just happened or could be attributed to these general accusations, he means the accusation by the doctor that did the surgery that it was the dead man's own fault for getting fat and having previously been a cigarette smoker, has been nullified by the clear, rational, and reasonable explanation put forward by the claimant's experts as to the inherent dangers of this surgery in general, and it's performed on Webb specifically. And that last pair of phrases refer to the discussion on pages 18 and 19. I mean, there it is, specific and legitimate. We know he rejected the employer's theory of causation. He doesn't say that he's rejecting Dr. Hacker's opinion, but I think that's a reasonable inference. But we don't know whether he's rejecting it because he thinks that Dr. Hacker's testimony was inconsistent, because he doesn't believe the theories actually agreed to by every expert in this case that people can just have strokes if they're predisposed to, or for some other reason, because he doesn't like Dr. Hacker. We don't know why in this case he specifically rejected or impliedly rejected Dr. Hacker's opinion. We have to infer it, and the treating physician rule requires some process, something more than us inferring after the fact what possibly could have been the ALJ's reason for rejecting this testimony. Thank you. Thank you.
judges: Ferguson, Kleinfeld, Graber